6459.  CITY OF THOMASVILLE *v.* JONES.

WADE, J. 1. Considering the petition as a whole, it is apparent that recovery is sought for the homicide of the minor son of the plaintiff because of negligence on the part of the defendant in so maintaining and operating an electric-lighting plant for hire that a dangerous current of high voltage was thereby permitted to pass from the primary conducting wires to secondary wires, intended only for the passage of an innocuous current of low voltage, which the deceased had a right to anticipate would alone be allowed to enter the secondary wires, which current of high voltage entered his body with fatal effect, through an electric-light fixture which the performance of his duties required him to

40

move and thus come in contact with, and which was connected with a house-lighting system, requiring a voltage of approximately 110 only.

(*a*) The petition as amended was not subject to general demurrer, nor was there such harmful error, in the light of the entire pleadings and evidence in the case, in the overruling of the special demurrers, as to require the grant of a new trial.

2. The evidence disclosed that the deceased was a young and vigorous man, with no known physical defect at the time of his death; that in the performance of his duties he caught hold of a tin reflector attached to a sixteen-candle-power incandescent light, to supply which only a current of 110 to 120 volts was necessary or proper; that his death followed almost instantaneously, under circumstances from which the jury were authorized to infer that it was brought about by a high and dangerous electrical current of far greater voltage than that requisite to supply the said light, and far greater than the deceased had any reason to apprehend was then traversing the electric fixture or entering the secondary circuit connected therewith, which high and dangerous current had been permitted to enter the secondary wires or circuit and thus bring about his death, through the negligence of the defendant.

(*a*) Under the proof that a current of 110 to 120 volts would be entirely harmless, and the circumstances in proof showing the manner of his death, the jury were authorized to infer that a current of far greater voltage than 120 was traversing the secondary circuit at the moment the deceased placed his hand on the reflector attached to the incandescent lamp, and that his death resulted therefrom; and since the evidence disclosed that a voltage of 110 to 120 only should have been permitted to circulate, or would have circulated through the secondary wires or circuit if no negligent contact between the primary and secondary wires had occurred, or if the electric-light plant had been properly constructed, the jury had the right to infer that the negligence of the defendant in the construction, connection, or maintenance of the wires belonging to its plant brought about the passage of the highly dangerous and unnecessary current over the secondary circuit, and thereby caused the death of the deceased. The doctrine of res ipsa loquitur applies, since the happening of the event necessarily established the existence of antecedent negligence which produced the result. See on the general subject *Sinkovitz* v. *Peters Land Company*, 5 *Ga. App.* 788 (64 S. E. 93).

(*b*) The proximate efficient cause of the injury was the admission, through the negligence of the defendant, of a high and dangerous current into wires intended to convey only a low and harmless current; and the fact that there was a defect in the lamp itself, or that the fuse in the building where the deceased met his death was a 20-ampere fuse, capable of conducting a higher current than that required to supply the lighting system in the building where the deceased was killed, and to furnish enough electricity for a 16-candle light, could not affect this necessary conclusion. If a dangerous current of electricity had not been permitted to enter the secondary wires by negligence

on the part of the defendant, it could not have been conveyed to the deceased, and no harm could have resulted to him; so that, regardless of any defects in the wiring of the building or in the lamps in use therein (if the employer of the deceased, and not the defendant, was chargeable with the construction and maintenance of such lamps, wires, and their connection in said building), the proximate cause of the homicide was the negligent admission of a dangerous current.

(c) "There are cases where, in the absence of proof of any external cause and the accident is of a kind which does not ordinarily occur without negligence, a jury may infer the want of due care from the mere happening of the occurrence; prima facie such negligence will be attributed to the person charged by law with the duty of maintaining and managing the thing causing the injury." *Chenall* v. *Palmer Brick Co.*, 117 *Ga.* 106 (43 S. E. 443). The defendant offered no proof which tended to afford any explanation as to how the death was brought about; and since the defendant was charged with the duty of maintaining- and managing the instrumentality which the jury was authorized to infer from the evidence brought about the death, the negligence without which such occurrence could not ordinarily take place could be inferred by the jury from the mere happening of the event.

3. The value of the life of the deceased was not necessarily to be ascertained by proof of the actual amount he was earning a$^+$ the exact time of his death. The jury, in reaching a conclusion as to the present value of his life, were authorized to take into consideration his previous earning capacity, the state of his health at the time of his death and previous to that time, the probability of an increase in his earning capacity during the years of his life expectancy, as well as a decrease in such capacity during the final years of that expectancy, resulting from advancing years, his apparent mentality, industry, and other qualities, as disclosed by the evidence. Furthermore, in the lump sum found, they were authorized to include interest from the date of his death to the date of the rendition of the verdict. Measured in this way, and taking into consideration all the testimony tending to establish the value of his life as contradistinguished from the amount he was earning at the precise time of his death, this court can not say as a matter of law that the verdict returned, which has been approved by the trial judge, was not authorized by the evidence, or was in fact so excessive as to indicate with certainty such partiality and bias on the part of the jury as would require that it be set aside. *Standard Oil Co.* v. *Reagan*, 15 *Ga. App.* 571 (7, 8), 572 (84 S. E. 69).

4. While, in order for a mother to recover for the tortious homicide of her minor child, under the provisions of section 4424 of the Civil Code, it must appear that at the time of the homicide she was either wholly or partially dependent upon the child, who contributed substantially or materially to her support, the mother may recover notwithstanding the father of the child is in life and in good health, living with the family and exercising his parental rights up to the time of the child's death. The fact of contribution and dependency creates the right of action in favor of the mother, and not the legal obligation to contribute to her

support; and the contribution may be either in labor or in money. *Fuller* v. *Inman*, 10 *Ga. App.* 680 (74 S. E. 287).

(*a*) Where father and mother and minor children all reside together and are mutually dependent upon the labor of the family for support, a minor child over 18 years of age, whose labor, or the proceeds of it, comes into the common stock for the benefit of the entire family, must be considered as contributing substantially to the support of the mother. *Augusta Railway Co.* v. *Glover*, 92 *Ga.* 132 (6), 133 (18 S. E. 406). It need not appear, in order to authorize a recovery, that the mother is dependent alone upon the deceased child for her entire support, but it is sufficient if it appears from the evidence that she partially depends upon the labor of the child, accompanied by contributions therefrom to her maintenance. *Savannah Electric Co.* v. *Bell*, 124 *Ga.* 663 (2), 665 (53 S. E. 109). See also *Central R. Co.* v. *Henson*, 121 *Ga.* 462 (49 S. E. 278); *Atlantic Coast Line R. Co.* v. *McDonald*, 135 *Ga.* 635 (7), 636 (70 'S. E. 249); *Atlanta & Charlotte Air-Line Ry. Co.* v. *Gravitt*, 93 *Ga.* 369 (20 S. E. 550, 26 L. R. A. 553, 44 Am. St. R. 145); *Daniel* v. *S., F. & W. Ry. Co.*, 86 *Ga.* 236 (12 S. E. 365).

(*b*) Proof that the deceased had been working as a clerk in a store in which he was pecuniarily interested with his father, where it further appeared that his mother received the benefit of such labor on his part to a considerable extent, sufficiently established contribution on his part; and the evidence established also the partial dependency of the mother upon the labor of the child. The fact that the child had ceased this particular labor a few days before his death, and obtained other employment in a near-by city, from which he had not, at the time of his death, received any remuneration, and, therefore, from which he had made no contribution to his mother, would not show a lack of contribution on his part or lack of dependence on the part of the mother, where previous dependence and regular and continued contributions were shown, and nothing appeared from which it could be reasonably inferred that such contributions would not continue, or that the mother was no longer dependent upon and relying upon such contributions from the child at the time of his death.

5. The numerous exceptions not covered by the foregoing rulings, including objections to the admission of testimony and to excerpts from the charge of the court, when considered in the light of the entire record, are without such substantial merit as to require a reversal. The issues were fairly submitted to the jury, and while the trial was perhaps not entirely free from error, there was no such harmful error as necessitates the setting aside of the verdict, approved by the trial judge by the denial of the motion for a new trial.

*Judgment affirmed.*

DECIDED FEBRUARY 10, 1916.

Action for damages; from city court of Thomasville—Judge W. H. Hammond. March 1, 1915.

*W. I. MacIntyre, Roscoe Luke, C. E. Hay, L. S. Moore,* for plaintiff in error. *Theodore Titus,* contra.